# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JESSICA POULLARD

**VERSUS**

CITY OF BATON ROUGE, ET AL.

CIVIL ACTION

NO. 24-394-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss under Rule 12(b)(6)* (Doc. 31) filed by Defendants, City of Baton Rouge/Parish of East Baton Rouge ("City/Parish") and Officer JaByron McGloster ("McGloster") (collectively, "Defendants").[1] Plaintiff Jessica Poullard filed an opposition, (Doc. 35), and no reply was filed. The Court has carefully considered the law, the well-pled facts contained in the *First Amended Complaint* ("*FAC*") (Doc. 23), and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part and denied in part.

## I. RELEVANT FACTUAL BACKGROUND

Poullard brings this action under 42 U.S.C. § 1983 and Louisiana state law against (1) McGloster; (2) certain unidentified officers; and (3) the City/Parish. (*FAC* ¶ 1, Doc. 23.) The heart of Plaintiff's complaint is that McGloster used excessive and unreasonable force against her.

More specifically, Plaintiff alleges that, in the early morning hours of May 23, 2023, she arrived at the Greyhound bus station in Baton Rouge, Louisiana. (*Id.* ¶ 8.) She noticed her brother conversing with McGloster and an unknown female security guard. (*Id.* ¶ 9.) Plaintiff approached the three and began talking with her brother. (*Id.*)

---

[1] The Baton Rouge Police Department ("BRPD") purports to bring the motion as well, but BRPD is not listed as a party in the operative complaint. (*See First Am. Compl.* ¶ 5, Doc. 23.)

McGloster then told Plaintiff to return to her car. (*Id.*) Plaintiff "complied and began walking back to her vehicle, but as she was walking away, she was suddenly tackled to the ground by McGloster from behind, injuring her right foot." (*Id.* ¶ 10.) Plaintiff complained of acute pain and an inability to walk, but McGloster kept asking her to go back to her car and refused to help her off the ground. (*Id.* ¶ 11.)

Several other BRPD officers then arrived, but they did not help Plaintiff as she remained immobile. (*Id.* ¶ 12.) Finally, another, unidentified officer arrived and called for an ambulance. (*Id.*) Plaintiff "refused because, despite the pain and limited mobility, she was unaware of the extent of her injuries." (*Id.*)

Plaintiff was cited with "Simple Battery" (La. R.S. § 14:35) and "Entry on or Remaining in Places/Land After Forbidden" (La. R.S. § 14:63.3). (*Id.* ¶ 13.) On information and belief, Plaintiff was never formally charged on these citations, and there are no pending criminal charges related to this incident. (*Id.*)

Plaintiff went home but, after the incident, her pain and swelling worsened to the point where her mother took her to the emergency room. (*Id.* ¶ 14.) She learned that her right ankle was fractured and that she would need surgery to correct the problem. (*Id.*) On June 8, 2023, Plaintiff had the surgery, and she had at least one follow up on June 15, 2023. (*Id.* ¶ 15.) As a result of the incident, Plaintiff could not work for roughly two months, and, "[n]early a year later, [she] continues to suffer pain and a restricted range of activities." (*Id.* ¶¶ 16–17)

Plaintiff asserts the following claims: (1) a § 1983 claim against McGloster for excessive force in violation of the Fourth Amendment, (*id.* ¶¶ 19–23); (2) a § 1983 claim for failure to intervene against the unknown officers, (*id.* ¶¶ 24–27); (3) a Louisiana state law claim for intentional infliction of emotional distress ("IIED") against all defendants, (*id.* ¶¶ 28–30); (4) false

imprisonment against all defendants, (*id.* ¶¶ 31–34); (4) battery against McGloster, (*id.* ¶¶ 35–38); (5) failure to supervise and train against unidentified supervisory BRPD officials, (*id.* ¶ 39–42); and (6) vicarious liability against the City/Parish, (*id.* ¶¶ 43–44). Plaintiff prays for compensatory and punitive damages, costs, and attorney's fees. (*Id.* at 11.)

## II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex*

*rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

## III. PRELIMINARY EVIDENTIARY ISSUE

At the outset, the Court must determine whether to consider the dashcam footage and other evidence submitted by Defendants with their motion. (Doc. 29 and attachments.) Defendants acknowledge that courts should "consider a motion to dismiss based on the four-corners of the Plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response, (Doc.

31-1 at 4 (citing *Ramos v. Taylor*, 646 F. Supp. 3d 807, 814 (W.D. Tex. 2022))), but they then contend that there are certain situations where video evidence is acceptable for purposes of a defendant's Rule 12(b) motion. (*Id*.) Defendants cite to *Villareal*, stating that "the Court may consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'" (*Id*. (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).)

Here, Defendants assert that the police body camera footage of the arrest "expresses a different account of the events" than what is pled in the *FAC*. (*Id*.) Specifically, Defendants maintain that the video depicts Plaintiff walking towards the officer, not complying, and then being detained. (*Id*. at 4–5.) According to Defendants, Plaintiff omits portions of footage where Plaintiff was asked to return to her vehicle and failed to comply with these orders. (*Id*. at 5.) Only after being handcuffed, say Defendants, did Plaintiff comply with the officer's commands, and this is evidence of inconsistent facts and allegations made. (*Id*.)

Plaintiff responds that the Court must accept the allegations within the *FAC* as true and then test them against the legal standards implicated by Plaintiff's claims. (Doc. 35 at 4.) Under Rule 12(b)(6), a motion to dismiss considers only the "four-corners of the complaint and attachments thereto." (*Id*. at 4 (citing *Villarreal*, 814 F.3d at 766).) Defendants' intention to introduce video camera footage of the events is improper, as "no such document is attached to or referred to within the Complaint or [*FAC*]." (*Id*.)

Moreover, even if the Court considers the video camera footage, the Defendants "mischaracterize[e]" what the footage depicts. (*Id*. at 5.) Plaintiff insists the footage shows her backing away from McGloster, who then throws Plaintiff to the ground after Plaintiff pushed his hands from her body. (*Id*.) According to Plaintiff, this footage shows the injuries sustained by

unreasonable excessive force from McGloster and therefore shows the plausibility of these claims. (*Id.*) The Court should reserve Defendants' arguments for later in the proceedings, not for a motion to dismiss. (*Id.*)

Having carefully considered the matter, the Court will not use Defendants' evidence to decide the instant motion. Many courts have declined to consider body camera footage attached to a motion to dismiss. *See Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 325–26 (E.D. Tex. 2021) (finding that video was not "sufficiently incorporated into the Complaint" because plaintiff did "not cite to the body camera footage[;]" because, while plaintiff provided certain quotes in complaint, it was "equally likely that the quotes came from Plaintiff's own recollection[;]" and because "the source of the quotes remains unclear, and there are no additional facts indicating that Plaintiff utilized the body camera footage in any way while drafting his Amended Complaint"); *Ambler v. Williamson Cnty.*, No. 1-20-CV-1068-LY, 2021 WL 769667, at *3 (W.D. Tex. Feb. 25, 2021) (declining to consider a video on a motion to dismiss (a) because "Plaintiffs' Complaint [did] not reference" the exhibit but "rather . . . refer[enced] [ ] the video filmed by Live PD, which allegedly has been destroyed," and (b) because "the Video capture[d] only part of the underlying incident and merely 'provide[d] one [ ] officer's perspective of the incident at issue," so, "[w]hile the Video may be central to Defendant's defense in this case, Defendant [ ] failed to demonstrate that the Video [wa]s central to Plaintiffs claims" (citing, inter alia, *Turner v. Byer*, No. 2:17-CV-1869-EFB P, 2020 WL 5518401, at *1 (E.D. Cal. Sept. 14, 2020) ("As plaintiff points out, the video is not part of the complaint and thus is extrinsic material not properly considered in determining whether the allegations of the complaint are sufficient to state a claim for relief."), *R. & R. adopted*, 2020 WL 6582267 (E.D. Cal. Nov. 10, 2020); *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *3 (M.D.N.C. Mar. 25, 2020) (finding

that a police camera video attached to defendant's motion to dismiss was not central to plaintiff's complaint where complaint made "no express mention of the video"); *Slippi-Mensah*, 2016 WL 4820617, at *3 (declining to consider dashboard video footage of traffic stop on motion to dismiss where video encompassed only one part of events from which plaintiff's claims arose)).

Here, it is unclear whether Plaintiff considered the dashcam footage and other evidence submitted by Defendants with her *FAC*, and that evidence is not referenced in that pleading. (*See FAC*, Doc. 23.) Consequently, the Court would have to convert the instant motion to one for summary judgment in order to consider this evidence. *See Hodge v. Engleman*, 90 F.4th 840, 844–45 (5th Cir. 2024) ("Although the court may rely on documents that the pleadings incorporate by reference, Hodge did not attach the video evidence to the pleadings, nor did the pleadings refer to the videos sufficiently to incorporate them. Therefore, by reviewing the 'appended video evidence,' the district court moved beyond the pleadings and to the summary judgment stage— thus implicitly converting the motion to dismiss into a motion for summary judgment per Rule 12(d)." (cleaned up)); *Polnac*, 555 F. Supp. 3d at 326 n.8 ("In the Court's view, after consideration of the Amended Complaint and the facts contained therein, the body camera footage is evidence likely to be more properly considered at the summary judgment stage of the litigation.").

"[U]nder Rule 12(d) this Court has complete discretion to determine whether or not to accept any material beyond the pleadings and thereby convert a Motion to Dismiss to a Motion for Summary Judgment." *Cormier v. Turnkey Cleaning Servs., L.L.C.*, 295 F. Supp. 3d 717, 722–23 (W.D. La. 2017) (citing *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n. 3 (5th Cir. 1988); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414–15 (5th Cir. 1980)). The Court declines to exercise that discretion here and will not consider the evidence.

### III.    DISCUSSION: § 1983 INDIVIDUAL CAPACITY CLAIMS

#### A.  Excessive Force Claim Against McGloster

##### 1.  Overview of the Law

"Qualified immunity shields government officials performing discretionary functions from civil damages liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 90 (2023) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Determining whether an officer is entitled to qualified immunity requires a two-step inquiry." *Id.* "First, we ask whether the officer's alleged conduct has violated a federal right. Second, we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Id.* at 185–86 (cleaned up). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the first prong, "[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "To prevail on an excessive force claim, a plaintiff must establish: '(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (Dennis, J.) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). More on this standard will be provided below.

As to the second prong, "[i]n determining what constitutes clearly established law, [the Fifth Circuit] first looks to Supreme Court precedent and then to [its] own." *Crittindon*, 37 F.4th at 186 (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). "When there is no direct controlling authority, '[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* (quoting *Shumpert*, 905 F.3d at 320 (internal quotation marks and citation omitted)). "Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* (quoting *Shumpert*, 905 F.3d at 321 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002))).

Nevertheless, "[t]o be clearly established, a right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam)). Courts "do not require plaintiffs to identify a case 'directly on point,' but the case law must "place[ ] the statutory or constitutional question *beyond debate*.'" *Id.* at 600–01 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

### 2. *Parties' Arguments*

Defendants argue (1) that Plaintiff suffered minimal injuries, (2) that two of the three *Graham* factors weigh in favor of the officers, and (3) that the use of force was reasonable given the situation. (Doc. 31-1 at 9.) First, Plaintiff states she was walking back to her vehicle when she was tackled from behind. (*Id.* at 6.) But, Defendants insist the dashcam video shows otherwise; Plaintiff does not comply with McGloster's orders to leave. (*Id.*) Further, for an excessive force

claim, a plaintiff needs to show that the injury is more than "*de minimis*." (*Id*. (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)).) Defendants explain that the "sliding scale" approach used by the Fifth Circuit treats the degree of injury as a correlation to the reasonableness and excessiveness of the officer's force. (*Id*. at 7 (citing *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022)).) Plaintiff's alleged injuries are "properly characterized as minor/ *de minimis* injuries[,]" as case law establishes that abrasions, bruises, and high blood pressure are minor injuries. (*Id*. (citing *Westfall v. Luna*, 903 F.3d 534, 549–50 (5th Cir. 2018); *Buehler*, 27 F.4th at 982).) Plaintiff refused to receive care from EMS paramedics, and this also indicates that Plaintiff's injuries were not major at the time of the incident, as does the fact that there is no allegation of additional medical treatment following the incident. (*Id*.)

Next, Defendants look to the amount of force used in detaining Plaintiff and the reasonableness of asserting such force. (*Id*. at 8.) According to Defendants, the Supreme Court considers three factors to determine the reasonableness of force: (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." (*Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).) Here, Plaintiff acted "aggressively on-scene, and pose[d] an immediate threat to the safety of the officer [and] others." (*Id*.) Thus, this satisfied the first two *Graham* factors. (*Id*.) Defendant concedes that when passive resistance is taking place, use of force is not justified. (*Id*. (citing *Trammell*, 868 F.3d at 341).) However, the "use of force" in this situation was simply detaining Plaintiff, so this factor is not an issue. (*Id*.) Defendants continue that courts will look to the speed with which an officer reacted with force and balance this with whether the force was reasonable for the officer to use. (*Id*. at 8–9.) Here, the officers did not use force in a "traditional sense" but merely placed a suspect in detention for her behavior. (*Id*.

at 9.) Thus, Defendants conclude that, looking to each of the *Graham* factors, McGloster's actions were reasonable and did not violate Plaintiff's constitutional rights. (*Id.*)

In response, Plaintiff insists that her well-plead allegation, taken as true, support a plausible claim of a constitutional violation. (Doc. 35 at 6.) When this incident took place, courts had "well-established that American citizens have a right to be free from unreasonably excessive violence by state and federal actors. . . ." (*Id.*) By employing such force against Plaintiff, she has articulated more than a plausible claim that entitles her to relief. (*Id.* at 6–7.)

Plaintiff next argues that in the *FAC*, there are substantial allegations that McGloster suddenly tackled Plaintiff to the ground, causing a fracture to her right ankle. (*Id.* at 8.) When these allegations are taken as true, they are sufficient to satisfy the injury requirement for a claim of excessive force. (*Id.*)

Plaintiff then addresses the reasonableness of the force, explaining that she was only cited with minor misdemeanors of "Simple Battery" and "Entry on or Remaining in Places/Land After Forbidden." (*Id.* at 8.) Plaintiff compares her case to *Trammell*, where the court found that the severity factor worked against a use of force claim where the crime was a misdemeanor. (*Id.* (citing *Trammel*, 868 F.3d at 340).) Additionally, again accepting the *FAC* as true, Plaintiff was unarmed and tackled suddenly while moving away from the area. (*Id.* at 9.) Defendants only offer "circular conclusion[s]" that Plaintiff was acting aggressively or posing a threat to McGloster. (*Id.*) Finally, Defendants showed no evidence that Plaintiff attempted to resist arrest or flee. (*Id.*) And, even if the video footage is considered, the lack of "audio, context, and clear line of sight" would not serve to "defeat the plausibility of, much less refute, [Plaintiff's] claims." (*Id.*) Rather, when looking to the "four-corners of the pleading", Plaintiff can plausibly show that Defendants actions were objectively unreasonable and in violation of her Fourth Amendment rights. (*Id.* at 10.) Thus, each

of these factors weigh in favor of Plaintiff, and therefore are sufficient to establish a plausible claim for entitlement to relief. (*Id.*)

### 3. Applicable Law

As to the first prong, "the plaintiff's asserted injury must be more than *de minimis.*" *Freeman*, 483 F.3d at 416 (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). "The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Id.* at 416–17 (quoting *Ikerd v. Blair*, 101 F.3d 430, 435 (5th Cir. 1996) and citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) ("In determining whether an injury caused by excessive force is more than de minimis, we look to the context in which that force was deployed.")). "Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, '[the Fifth Circuit] do[es] require a plaintiff asserting an excessive force claim to have "suffered at least some form of injury."'" *Glenn*, 242 F.3d at 314 (quoting *Williams*, 180 F.3d at 703); *see also Keele v. Leyva*, 69 F. App'x 659, 2003 WL 21356063, at *1 (5th Cir. 2003) (unpublished) (per curiam) ("The injury must be more than a *de minimis* physical injury[ ] but need not be significant or serious." (citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999))). Elaborating on this, the Fifth Circuit has said:

> "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 Fed. Appx. 69, 79 (5th Cir. 2013) (quoting [*Ikerd*, 101 F.3d at 434–35]). "*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (emphasis added) (footnote omitted). Consequently, "only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment." *Ikerd*, 101 F.3d at 434 n.9. In short, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant

> injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Brown*, 524 Fed. Appx. at 79 (footnotes omitted) (quoting *Ikerd*, 101 F.3d at 434).

*Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). *See also Hinson v. Martin*, 853 F. App'x 926, 932 (5th Cir. 2021) (per curiam) ("the relatively minor injury (pain) that Hinson alleges resulted from being kicked, when examined in the context of a subdued, handcuffed, and compliant arrestee, may suffice to meet the injury element of an excessive force claim, if objectively unreasonable."); *Ikerd*, 101 F.3d at 435 (finding sufficient evidence of injury when ten-year-old child suffered "soft tissue injury to her forearm, possible nerve damage, and post-traumatic stress disorder" when a 300-pound deputy "violently jerked [her] . . . out of her living room chair and dragged her into another room" when she "was not under arrest and posed no threat to anyone" and thus "there was no need to use any physical force against [her]"). *Cf. Buehler v. Dear*, 27 F.4th 969, 983 (5th Cir. 2022) (finding injuries *de minimis* when "any lacerations [plaintiff] suffered were so minor as to be essentially invisible" and when plaintiff admitted that "he did not physically suffer 'anything beyond . . . bruising and pain,' for which he did not seek medical attention while in jail or the day he was released (and apparently was never prescribed any treatment except 'self-care' and 'ibuprofen or something').").

As to the second prong—that the injury "resulted directly and only from a use of force that was *clearly excessive*," *Freeman*, 483 F.3d at 416 (emphasis added)—the Fifth Circuit "distinguish[es] between injuries resulting from excessive force and those resulting from the justified use of force." *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc) (citation omitted). "A trier of the fact can compensate only for injury caused by the use of excessive force. There can be no award for injury caused by reasonable force." *Id.* Thus, there is no bar to "recovery for aggravation of preexisting injury caused by the use of excessive force." *Id.*

As to the third prong, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (cleaned up). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396, and citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case")). "Factors to consider include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). "[T]he question is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

"As in other Fourth Amendment contexts [ ], the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

14

*Id.* (cleaned up). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Nevertheless, "a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest," and Fifth Circuit "case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced." *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (citations omitted). For example, in *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), the appellate court found that "it was objectively unreasonable for an officer to slam an arrestee's face into a vehicle when the arrestee 'was not resisting arrest or attempting to flee.'" *Darden*, 880 F.3d at 731 (quoting *Bush*, 513 F.3d at 502). "Similarly, in [*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012),] [the Fifth Circuit] found that it was objectively unreasonable for officers to tase and strike an arrestee with a nightstick without resorting to less violent means when the arrestee's 'behavior did not rise to the level of "active resistance."'" *Id.* (quoting *Newman*, 703 F.3d at 763). *Compare Buehler*, 27 F.4th at 983–84 (finding plaintiff who took several steps backwards away from officers immediately after officer told him to turn around and that he was under arrest and who "lurched forward in an attempt to get away" was "actively resist[ing] arrest" for purposes of excessive force analysis), *with Deville*, 567 F.3d at 167 (finding the district court erred in granting summary judgment because "there [wa]s a factual dispute over the nature of Deville's resistance" in that, according to her version, "her resistance was, at most, passive in that she merely refused to leave her grandchild and exit the vehicle until Mr. Deville came to get the child—not that she affirmatively, physically resisted as the officers contend.").

15

"Yet another consideration bearing upon the reasonableness of an arresting officer's use of force is whether it involved measured and ascending responses to a suspect's noncompliance." *Buehler*, 27 F.4th at 984 (cleaned up). Thus, in *Buehler*, the Court explained that an officer was entitled to qualified immunity when the plaintiff "relentlessly followed around officers for hours, disobeying their repeated and unambiguous commands that he step back at least arm's length away so as not to block the Officers' field of vision." *Id.* at 984–85.

But, "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (quoting *Gomez*, 163 F.3d at 923). Thus, in *Deville*, the Fifth Circuit found that "a jury could reasonably find that the *degree* of force the officers used in this case was not justifiable under the circumstances" (1) because the officer "engaged in very little, if any, negotiation with [the plaintiff]" but "instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle" and (2) because "[b]oth parties' experts agree[d] that continued negotiations [were] more appropriate than actual force where the suspect is only stopped for a minor traffic offense and is making no attempt to flee." *Deville*, 567 F.3d at 167–68.

Returning to the *Graham* factors as a whole, in *Hanks v. Rogers*, 853 F.3d 738, 749 (5th Cir. 2017), the Fifth Circuit held that an officer was not entitled to qualified immunity when "all of [the *Graham*] factors strongly favor[ed]" the plaintiff. The appellate court stated:

> We hold that on Feb. 26, 2013, clearly established law demonstrated, and *Graham* makes obvious, that it was clearly unreasonable and excessive for Officer Rogers to abruptly escalate the encounter via a physical takedown where (1) Officer Rogers stopped Hanks for a minor traffic offense; (2) immediately before the takedown, Officer Rogers had his taser aimed at Hanks's back while Hanks stood against his vehicle, facing away from Officer Rogers, with his empty hands displayed behind his back, presenting no immediate threat or flight risk; and (3) Hanks offered, at most, passive resistance, including asking whether he was under arrest.

16

*Id.* at 749–50. Significantly, the "passive" resistance "consisted chiefly of remaining on his feet for about twenty seconds after [the officer's] first order to kneel" and taking a "small lateral step with his left foot" either before or simultaneously with the use of force, but, either way, the "step was not accompanied by any obvious signs of violence or flight." *Id.* at 746.

Similarly, in *Deville*, the Fifth Circuit found sufficient evidence to deny qualified immunity based on the following:

> [T]his case involved: a traffic stop for a minor traffic offense unsupported by probable cause; Deville's passive resistance to being removed from her car and separated from her grandchild, in compliance with her well-established rights under state law to resist an unlawful arrest (i.e., an arrest unsupported by probable cause); the officer's threat of calling child protective services despite no indication that the child was in distress or that Deville intended to flee; an officer who others said smelled of alcohol beating on Deville's driver's window with a heavy flashlight and breaking the window; a rough extraction of Deville from the vehicle by both officers, causing a forceful blow to Deville's abdomen; and handcuffs applied so tightly that they caused severe nerve damage.

*Deville*, 567 F.3d at 169. "These alleged facts are sufficiently egregious to warrant a denial of qualified immunity because a reasonable officer would have known that the degree of force was unconstitutionally excessive under the circumstances." *Id.*

### 4. Analysis

Having carefully considered the *FAC*, Plaintiff easily pleads a claim for excessive force. First, her injuries are not *de minimis*; Plaintiff alleges that at the time of the incident, she suffered only pain and limited mobility but that she was unaware of the full extent of her injuries. (*FAC* ¶ 12, Doc. 23.) But, after the incident, her pain and swelling worsened, which necessitated a visit to the emergency room. (*Id.* ¶ 14.) There, she learned her right ankle was fractured and needed surgery. (*Id.*) Plaintiff had at least one follow up visit a week after the surgery, and she continues

to feel pain and a restricted range of activities. (*Id.* ¶¶ 15, 17.) Thus, Plaintiff clearly suffered "at least some form of injury," *Glenn*, 242 F.3d at 314, particularly in light of the other authority highlighted above.

Likewise, as pled, Plaintiff's injury "resulted directly and only from a use of force that was *clearly excessive*" and unreasonable. *Freeman*, 483 F.3d at 416 (emphasis added). Looking at the *Graham* factors, (a) the severity of the crimes at issue (Simple Battery and Entry on or Remaining in Places/Land After Forbidden, *FAC* ¶ 13, Doc. 23) is minor; (b) there is no indication from the *FAC* that plaintiff "pose[d] an immediate threat to the safety of the officers," *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396), particularly in light of the fact that, at the time force was applied, she "complied and began walking back to her vehicle" and was "suddenly tackled . . . as she was walking away," (*FAC* ¶ 10, Doc. 23); and (c) she was, at that point, not "actively resisting arrest or attempting to evade arrest by flight," *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396). And, even if Plaintiff was resisting, there is nothing in the *FAC* to show "measured and ascending responses to a suspect's noncompliance." *Buehler*, 27 F.4th at 984.

Further, all of the authority summarized above demonstrate that, at the time of this incident, Plaintiff's right to be free from excessive force of this nature was clearly established. Thus, Plaintiff has overcome qualified immunity at this stage.

Defendants' arguments essentially boil down to a reliance on the dashcam footage. As stated above, the Court will not consider those videos at this time, until after Plaintiff has an opportunity to conduct discovery and learn of the existence of other videos. As it stands now, Defendants' position is borderline frivolous in light of the allegations of the *FAC*. The motion will be denied on this issue.

### B. Failure-to-Intervene Claim Against Unknown Officers

#### 1. Parties' Arguments

Defendants next assert that Plaintiff's failure to intervene claim is without merit. (Doc. 31-1 at 10.) Defendants say that there was no other officer present at the time of the encounter and therefore there is no way for "another officer" to have been at the scene with McGloster. (*Id*.) As a result, no other officer could have had a reasonable opportunity to prevent the harm, and they could not have been presented with the choice to not act. (*Id*.) Thus, argue Defendants, Plaintiff's failure-to-intervene claim fails. (*Id.*)

Plaintiff responds that this claim revolves around several officers that arrived shortly after the incident took place, and their failure to assist in any "meaningful way" until an officer called EMS. (Doc. 35 at 10.) Plaintiff insists that the merits of this claim should be decided later in the proceedings rather than at the motion to dismiss stage. (*Id*.) For now, she has met the threshold burden for stating this claim, so the Court should deny the motion. (*Id*.)

#### 2. Applicable Law

"An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individua's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020) (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)). "Bystander liability requires more than mere presence in the vicinity of the violation; 'we also consider whether an officer "acquiesced in" the alleged constitutional violation.'" *Id.* (quoting *Whitley*, 726 F.3d at 647 (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995))). Qualified immunity requires a separate analysis for each officer. *See id.*

19

Further, "Plaintiffs have the burden to demonstrate that the law was 'clearly established'—that, as of . . . the date of their encounter with [plaintiff], any reasonable officer would have known that the Constitution required them to intervene." *Id.* at 345 (quoting *Saucier*, 533 U.S. at 199). "And [the Court] cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer." *Id.*

### 3. Analysis

Having carefully considered the matter, the Court will grant the motion on this issue. Plaintiff alleges that the other BRPD officers arrived *after* McGloster applied the use of force. (*FAC* ¶ 12, Doc. 23.) As Plaintiff concedes in argument, the basis for the claim is their failure to help *after* Plaintiff was tackled. Thus, by Plaintiff's own admission, these officers were not "present at the scene of the constitutional violation" and lacked "a reasonable opportunity to prevent the harm but nevertheless[ ] . . . chose not to act." *Joseph*, 981 F.3d at 343 (citation omitted). Likewise, Plaintiff has not cited a single case demonstrating that it was "clearly established" that, as of the date of the incident, "any reasonable officer would have known that the Constitution required them to intervene." *Id.* (citation omitted). Without more, Plaintiff's *FAC* fails to state a viable claim for bystander liability, and the claim will be dismissed.

## IV.    STATE LAW CLAIMS

### A.  Parties' Arguments

#### 1.  Defendants' Original Memorandum (Doc. 31-1)

Defendants first assert that Plaintiff fails to satisfy her burden for her IIED claim. (Doc. 31-1 at 11.) Plaintiff fails to allege conduct of Defendants that was extreme or outrageous. (*Id.*) Defendants also claim that Plaintiff fails to provide medical or psychological evaluations

"establishing a causal nexus" between the encounter with Defendants and her deteriorated mental health. (*Id.*) Additionally, Plaintiff fails to show evidence that Defendants knew that severe emotional distress would result from the actions taken on that date. (*Id.*) Thus, Defendants argue, Plaintiff failed to establish these assertions with valid proof, so the claim is without merit. (*Id.*)

Defendants next argue that the false imprisonment claim should be dismissed because Plaintiff did not describe the requirements for this claim. (*Id.* at 12.) Here, McGloster was acting within the scope of his employment and the law, and he would not have been able to falsely imprison Plaintiff at the time of the arrest. (*Id.*)

Defendants then attack the battery claim, asserting that McGloster used only minimal force which was necessary in detaining Plaintiff. (*Id.*) Louisiana allows an officer to use such force to detain or arrest, if there is probable cause. (*Id.* at 13.) Further, Plaintiff was unpredictable and non-compliant, and there were innocent bystanders who could have been harmed if McGloster did not act swiftly. (*Id.*) Defendants maintain that the "verbal remarks" and "physical disposition" of Plaintiff was aggressive. (*Id.*) Plaintiff would have continued her behavior had she not been detained, and an alternative to arrest was not available. (*Id.*) There was no "extraneous" force used on Plaintiff, and she was detained because of the exigencies of the situation. (*Id.*)

Defendants next contend that Plaintiff's claims of failure to supervise and train are unfounded. (*Id.* at 13.) Plaintiff does not point to any specific allegation, and even if they did, they are "conclusory in nature and insufficient to state a claim." (*Id.* at 14.) Defendants insist that Plaintiff has not "specifically identified '[a] persistent, widespread practice of city officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents municipal policy.'" (*Id.* (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)).) "[S]imply claiming [ ] that defendants had a policy of inadequately training officers is not

sufficient to carry this burden" without any factual support. (*Id.* (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d. 838, 852 (5th Cir. 2009)).) Even if Plaintiff pled that an official policy or custom of deficient training led to the constitutional violation, Plaintiff still failed to show that the alleged policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (*Id.* (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).) Plaintiff has not pled any causal connection between a policy of inadequate training and a constitutional violation. (*Id.* at 15.) Additionally, Plaintiff does not allege any facts that would "establish that [ ] McGloster knew or should have known of a policy or custom of inadequate training or supervision." (*Id.*) Thus, Plaintiff fails to state a viable claim against the City/Parish for failing to train its deputies. (*Id.*)

### 2. *Plaintiffs' Opposition (Doc. 35)*

Plaintiff's entire argument on the state law claims is as follows:

> Ms. Poullard's First Amended complaint substantially alleges that Ofc. McGloster told Ms. Poullard to return to her vehicle shortly after she arrived. While moving in that direction, she was suddenly tackled to the ground by Ofc. McGloster, causing her ankle to be broken and consequent emotional and physical pain along with medical expenses and lost wages. Taking the factual allegations as true, Ms. Poullard could plausibly prevail on all of the intentional tort theories mentioned. Further, Ms. Poullard alleges that unidentified officers of the BRPD failed to adequately supervise or train Ofc. McGloster in protocols for escalation and use of force (see para. 40 of the First Amended Complaint).

(Doc. 35 at 10–11.)

### 3. *Law and Analysis*

Plaintiff's state law claims will largely be dismissed on the grounds of waiver. "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d

620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)); *see also JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that, "[t]o avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases'" and holding that, because appellant "fail[ed] to do either with regard to its underlying claims, . . . those claims [were] inadequately briefed and therefore waived." (citing *United States v. Skilling*, 554 F.3d 529, 568 n.63 (5th Cir. 2009) and *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (noting that it is "not enough to merely mention or allude to a legal theory")); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver.").

"By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n.10); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point." (citing *United States v. Dominguez–Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones."))); *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*,

No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

Here, Plaintiff failed to provide any legal standard or any meaningful opposition for any of her state law claims. Such conclusory arguments will result in these claims being dismissed. *See JMCB*, 336 F. Supp. 3d at 634 (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that policy exclusion could apply because plaintiff failed to oppose insurer's argument on the issue); *see also Wuestenhoefer*, 105 F. Supp. 3d at 672 (finding that relator waived argument as to how certain write-offs fell within a particular provision of the False Claims Act).

The Court will make three exceptions here. First, the standard for a battery claim is substantially similar (though not identical) to that of a § 1983 excessive force claim and ultimately depends on the reasonableness of the officer's actions under the totality of the circumstances. *See Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 380–81 (M.D. La. 2022) (deGravelles, J.) (citing *Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977)). As a result, the Court finds that, because Plaintiff has stated a viable excessive force claim under § 1983, she has adequately pled a battery under Louisiana state law. *See id.* at 381 ("Having carefully considered the matter, the Court will deny Defendants' motion, largely for the same reasons the federal excessive force claims survive."); *see also Tennart v. City of Baton Rouge,* No. 17-179, 2022 WL 17084372, at *13 (M.D. La. Nov. 18, 2022) (deGravelles, J.) ("Similarly, Plaintiffs' assault, battery, and false imprisonment claims survive. That is to say, because Plaintiffs have viable excessive force and false arrest claims under § 1983, so too do these state law tort claims survive." (citing *Imani*)).

Additionally, the failure to train and supervise claim survives. Defendants cite to case law governing such claims under § 1983, *not* under Louisiana state law. Indeed, Plaintiffs' allegations strike the Court as arising more under negligence. In any event, because Defendants fail to meet *their* initial burden on the motion, Plaintiff's claim will survive at this stage.[2]

Finally, Plaintiff's claim for vicarious liability against the City/Parish survives. Louisiana Civil Code article 2320 provides that "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment." *Tutrix on behalf of DCJH v. Travis*, 595 F. Supp. 3d 488, 513 (M.D. La. 2022) (deGravelles, J.) (citing *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 821 (La. 2000)). "Governmental entities 'do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer.'" *Id.* (quoting *Deville*, 567 F.3d at 174 (citing *Brasseaux*, 752 So. 2d at 815)); *see also Bussey v. Dillard Dep't. Stores, Inc.*, 984 So. 2d 781, 784 (La. App. 1 Cir. 2008) ("[V]icarious liability [under art. 2320] applies to law enforcement employers as well." (citations omitted)). Here, Plaintiff plausibly alleges that McGloster was acting in the course and scope of his employment when he committed the torts in question, (*FAC* ¶¶ 43–44, Doc. 23), so this claim survives.

---

[2] The Court passes on the question of whether this claim will ultimately be dismissed later in the case due to the discretionary immunity of La. R.S. § 9:2798. *See Hoffpauir v. Columbia Cas. Co.*, No. 12-403, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013) (Brady, J.) (citing *Smith v. Lafayette Par. Sheriff's Dep't*, 874 So. 2d 863 (La. App. 3 Cir. 2004) (finding that liability could not be imposed on the sheriff department's hiring or retention policy); *Curran v. Aleshire*, 67 F. Supp. 3d 741, 763–64 (E.D. La. 2014) ("It is clear that Sheriff Strain's decisions to hire, train, supervise and retain officers are part of his discretionary power within the course and scope of his lawful powers and duties as sheriff" and thus granting summary judgment to the sheriff on these negligence claims); *see also Abbott v. Town of Livingston*, No. CV 16-188, 2018 WL 1095557, at *5 (M.D. La. Feb. 27, 2018) (Jackson, C.J.) ("Discretionary function immunity is not available to a sheriff as an affirmative defense at the motion to dismiss stage because it is a fact-intensive question." (citations omitted)).

## V.  LEAVE TO AMEND

As the Fifth Circuit stated in *Great Plains Trust Co. v. Morgan Stanley Dean Witter &*

*Co.*:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

313 F.3d 305, 329 (5th Cir. 2002). Further, this Court has reasoned:

> A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

*JMCB*, 336 F. Supp. 3d at 642 (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016)).

Here, Plaintiff has not previously amended her complaint in response to a ruling from this Court assessing the sufficiency of his claims. Thus, "the Court will act in accordance with the 'wise judicial practice' and general rule" and allow leave to amend. *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 372–73 (M.D. La. 2022) (quoting *Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021) (deGravelles, J.) (citing *JMCB*, 336 F. Supp. 3d at 641–42)); *see also Murphy v. Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (reaching same result (citing, inter alia, *JMCB, supra*)).

However, the Court cautions Plaintiff's counsel to abide by their Rule 11 obligations. They are obligated to make factual allegations and legal arguments only if there is a good faith basis in law or fact to do so. *See* Fed. R. Civ. P. 11. So, for example, they should consider changing the

allegations of the *FAC* *if* those allegations are blatantly contradicted by video evidence. The Court trusts Plaintiff's counsel to fulfill their obligations and offers this only as a reminder.

**VI.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss under Rule 12(b)(6)* (Doc. 31) filed by Defendants, City of Baton Rouge/Parish of East Baton Rouge, Baton Rouge Police Department, and Officer Jabyron McGloster is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that the following claims are **DISMISSED WITHOUT PREJUDICE**: (1) the § 1983 failure to intervene claim; and (2) all state law claims except (a) battery, (b) failure to train and supervise, and (c) vicarious liability. In all other respects, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff will be given twenty-eight (28) days in which to amend her complaint to cure the deficiencies outlined in this ruling. Failure to do so will result in the dismissal of these claims with prejudice.

**IT IS FURTHER ORDERED** that, if Plaintiff fails to timely file a new complaint, Defendants should notify the Court fourteen (14) days after the Plaintiff's deadline so that the Court can enter an order dismissing the deficient claims with prejudice.

Signed in Baton Rouge, Louisiana, on July 9, 2025.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**